AZADIAN LAW GROUP, PC
George S. Azadian (SBN 253342)
Ani Azadian (SBN 284007)
Edrik Mehrabi (SBN 299120)
707 Foothill Blvd., Suite 200
La Cañada Flintridge, California 91011
Ph.:    (626) 449-4944
Fax:    (626) 628-1722
Email: George@azadianlawgroup.com
Attorneys for Plaintiffs, TIFFANY GRETLER, LAURA CARMONA, SHELIA TAYLOR, SHALYSE KEMP, and the Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY GRETLER, an individual on behalf of herself and all others similarly situated; LAURA CARMONA, an individual on behalf of herself and all others similarly situated; SHELIA TAYLOR an individual on behalf of herself and all others similarly situated; SHALYSE KEMP an individual on behalf of herself and all others similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a corporation; KAISER FOUNDATION HOSPITALS, a corporation; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, a partnership; and DOES 1 through 10 inclusive,<br><br>           Defendants. | Case No. 18-cv-02175 AG (KKx)<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><u>Hearing Information</u>:<br>Judge: HON. ANDREW J. GUILFORD<br>Date:   July 22, 2019<br>Time:   10:00 a.m.<br>Dept.:  10D<br><br>[Filed concurrently with: (1) Notice Of Unopposed Motion And Motion For Award Of Attorneys' Fees, Costs, Incentive Payment To Class Representatives; (2) Declaration Of George S. Azadian, Esq.; (3) Declaration of Jeremiah Kincannon Regarding Notice And Settlement Administration; (4) Declarations Of Class Representatives; (5) [Proposed] Final Judgment And Order Granting Final Approval |

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 22, 2019 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D of the United States Courthouse, located at 751 W Santa Ana Blvd., Santa Ana, CA 92701, named Plaintiffs and Class Representatives Tiffany Gretler, Laura Carmona, Shelia Taylor, and Shalyse Kemp (together, "Plaintiffs"), will, and hereby do, move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Finally certifying the proposed Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Finally certifying the proposed FLSA Class under the Fair Labor Standards Act ("FLSA") under 29 U.S.C. § 216(b);

3. Confirming Plaintiffs' appointment as Class Representatives for settlement purposes;

4. Confirming the appointment of Azadian Law Group, PC as Class Counsel for settlement purposes;

5. Granting final approval to the class action settlement based upon the terms set forth in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement") as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure; and

6. Entering final judgment in the form of the [Proposed] Final Judgment and Order Granting Final Approval filed herewith.

This Motion is based on this Notice; the attached Memorandum of Points and Authorities; the supporting Declaration of George S. Azadian and exhibits attached thereto; Declarations of Class Representatives Tiffany Gretler, Laura Carmona, Shelia Taylor, and Shalyse Kemp; Declaration of Jeremiah Kincannon Regarding Notice and Settlement Administration; the [Proposed] Final Judgment and Order; the Settlement

-1-

1   Agreement; the pleadings and other papers filed in this action; and on any further oral or
2   documentary evidence or argument presented at the time of hearing.
3
4   Dated: June 24, 2019                    AZADIAN LAW GROUP, PC
5
6                                   By   /s/ George S. Azadian
7                                        George S. Azadian
                                         Ani Azadian
8                                        Edrik Mehrabi
                                         Attorneys for Plaintiffs Tiffany Gretler, Laura
9                                        Carmona, Shelia Taylor, Shalyse Kemp, and the
10                                       Class
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND & PROCEDURAL HISTORY ......................................................2

    A.     The Pleadings & Nature Of The Action..........................................................2

    B.     Defendants Deny Plaintiffs' Claims ...............................................................3

    C.     Discovery Taken By The Parties.....................................................................3

    D.     Mediation With David A. Rotman & Confirmatory Discovery .....................4

    E.     Preliminary Approval ......................................................................................5

III.    THE SETTLEMENT ............................................................................................5

    A.     The Settlement Class & Release Claims .........................................................5

    B.     The Settlement Payment..................................................................................6

    C.     Settlement Payment Distribution Plan ...........................................................7

        1.     Settlement Class Members' Individual Settlement Payments ...........8

        2.     Distributions To Settlement Class.....................................................9

IV.     NOTICE TO THE SETTLEMENT CLASS HAS BEEN SUCCESSFULLY COMPLETED ................................................................................................10

V.      CLASS PARTICIPATION: NO REQUESTS FOR EXCLUSION & NO OBJECTIONS .................................................................................................11

VI.     THE SETTLEMENT WARRANTS FINAL APPROVAL UNDER RULE 23 AND THE FLSA ........................................................................................12

    A.     The Settlement Is Fair, Adequate, And Reasonable ....................................14

        1.     The Strength Of Plaintiffs' Case .....................................................14

        2.     Risk, Expense, And Complexity Of Further Litigation ..................16

        3.     Risk Of Obtaining And Maintaining Class Action Status ..............18

-i-

4. Settlement Amount Provides Realistic Value For Claims ...............18

5. Discovery Completed And The Status Of Proceedings ..................19

6. The Experience And Views Of Counsel .........................................19

B. The Reaction Of The Class Members To The  Settlement ...........................19

VII. CONCLUSION......................................................................................................19

-ii-

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Cases**

Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566 (9th Cir. 2004) ............................................... 10

Dunleavy v. Nadler, 213 F.3d 454 (9th Cir. 2000) ..................................................................... 17

Eisen v. Carlisle & Jacqueline, 417 U.S. 156 (1974) ................................................................. 10

Franklin v. Kaypro Corp., 884 F.2d 1222 (9th Cir. 1989) .......................................................... 12

In re Heritage Bond Litig., 546 F.3d 667 (9th Cir. 2008) ........................................................... 12

In re Pac. Enter. Sec. Litig., 47 F.3d 373 (9th Cir. 1995) .......................................................... 18

In re Portal Software, Inc. Sec. Litig., No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. 2007).................................................................................................................................... 16

In re Syncor ERISA litigation, 516 F.3d 1095 (9th Cir. 2008) .................................................... 12

Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982)................................ 12

Marshall v. Holiday Magic, Inc., 550 F.2d 1173 (9th Cir. 1977) ............................................... 19

Morales v. Stevco, Inc., 2011 WL 5511767 (E.D. Cal. 2011) ...................................................... 4

Murillo v. Pacific Gas & Electric Co., 266 F.R.D. 468 (E.D. Cal. 2010).................................. 13

Nat'l Rural Telecomm. Coop. v. DirecTV, Inc., 221 F.R.D. 523 (C.D. Cal. 2004) ........ 12, 17, 19

Nordquist v. McGraw-Hill Broadcasting Co., 32 Cal. App. 4th 555 (1995) .............................. 14

Rodriguez v. West Publishing Corp., 563 F.3d 948 (9th Cir. 2009)............................................ 13

Schiller v. David's Bridal, Inc., No. 10-cv-616-AWI, 2011 WL 2117001 (E.D. Cal. 2012) ...... 19

Toure v. Amerigroup Corp., 2012 WL 1432302 (E.D. N.Y. 2012).............................................. 4

Viceral v. Mistras Grp., Inc., No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) ..... 17

**Statutes**

F.R.C.P. 23(e)(2) ................................................................................................ 13

**TABLE OF AUTHORITIES**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Tiffany Gretler, Laura Carmona, Shelia Taylor, and Shalyse Kemp ("Plaintiffs"), individually and on behalf of the Settlement Class, respectfully seek final approval of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") entered into by Plaintiffs and Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Southern California Permanente Medical Group (collectively, "Defendants" or "Kaiser").[1]

On March 18, 2019, this Court issued a detailed Order granting preliminary approval of the Settlement, which also conditionally certified the Settlement Class, appointed Plaintiffs' Counsel as Class Counsel, appointed Plaintiffs as the Class Representatives, appointed Simpluris as the Settlement Administrator, and approved the notice plan set forth in the Settlement Agreement.

There are 50 Settlement Class Members and the highest Individual Settlement Payment is calculated to be approximately $11,954.19, while the average Individual Settlement Payment is calculated to be approximately $4,621.86.  (See Declaration of Jeremiah Kincannon ("Kincannon Decl."), ¶ 11.)

As detailed below and in the accompanying declarations, the comprehensive notice plan has been completed, there have been no objections, no opt outs or requests for exclusion, and the settlement has been embraced by the Settlement Class as fair, adequate, and reasonable.

---

[1] Please note that for ease of reference and consistency, defined terms from the Settlement Agreement are utilized below and an index of defined terms is included as section 1 to the Settlement Agreement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## II.   BACKGROUND & PROCEDURAL HISTORY

### A.   The Pleadings & Nature Of The Action

The Action arises out of Defendants' alleged misclassification of Plaintiffs and all other Time System Coordinators ("TSCs") as exempt employees not entitled to overtime pay, compliant rest periods, complaint meal periods, and complaint wage statements. (Declaration of George S. Azadian ("Azadian Decl."), ¶ 4.)

On March 13, 2018, Plaintiffs filed a complaint in the Superior Court of the State of California for the County of Riverside, individually and on behalf of a class of similarly situated employees.  Class Counsel filed a First Amended Complaint on October 3, 2018, which is the operative complaint (hereinafter the "Action").  (Id. ¶ 5.)

The Action asserts the following causes of action: (1) failure to pay overtime compensation (Cal. Lab. Code §§ 510, 1194, 1198, 1199, and Wage Order 4-2001); (2) failure to provide compliant meal breaks (Cal. Lab. §§ 226.7 and 512 and Wage Order 4-2001); (3) failure to provide compliant rest periods (Cal. Lab. § 226.7 and Wage Order 4-2001); (4) failure to provide accurate itemized wage statements (Cal. Lab. § 226(a)); (5) failure to pay all wages owed upon termination (Cal. Lab. §§ 201-203); (6) violations of the Private Attorneys General Act of 2004 "PAGA" (Cal. Lab. § 2698 et seq.); (7) Unfair Competition (Bus. & Prof. Code § 17200); and (8) failure to pay overtime under the Fair Labor Standards Act ("FLSA").  (Id. ¶ 6.)  The Action was removed to this Court on October 12, 2018.  (Id. ¶ 7.)

The "Settlement Class" is defined as all Class Members who do not file a timely and valid Request for Exclusion.  There are fifty (50) "Class Members," which are defined as: all employees or former employees who, between March 13, 2014 and March 18, 2019 (the "Class Period") performed the duties of a TIME System Coordinator and worked for (1) Kaiser Foundation Health Plan, Inc. ("KFHP") in California with the job title of TIME System Coordinator and in job code 01293, 04016, or 921023; or (2) Southern California Permanente Medical Group ("SCPMG") in California with the job

-2-

1  title of Timekeeping Coordinator and job code 04016; or (3) Kaiser Foundation Hospitals

2  ("KFH") in California with the job title of TIME System Coordinator and job code

3  04016.[2]

4  ### B.    Defendants Deny Plaintiffs' Claims

5  Defendants deny (1) all the material allegations in this Action, (2) that they

6  violated any applicable laws, (3) that they are liable for damages, penalties, interest,

7  restitution, attorneys' fees, or costs, or for any other compensation or remedy with respect

8  to anyone on account of the claims asserted in the Action, and (4) that class certification,

9  collective action certification, or representative treatment is appropriate as to any claim in

10  the Action.  Defendants contend that their policies, procedures, and practices comply

11  with all applicable laws asserted in the Action.  (Id. ¶ 9.)

12  ### C.    Discovery Taken By The Parties

13  On June 25, 2018, Plaintiffs served written discovery, including: requests for

14  production of documents; special interrogatories; and requests for admissions.

15  Thereafter, the Parties agreed to exchange pre-mediation discovery, which included: (1)

16  the size of the Class; (2) the number of current employees who are members of the Class;

17  (3) the number of former employees who are members of the Class; (4) the average

18  salary of Class Members during the Class period; (5) the total number of work weeks

19  (broken down by current and former employees); (6) the average length of employment

20  of Class Members; (7) job descriptions for the TSC position held by the Class Members;

21  (8) work schedules for TSCs (the position of all the Class Members), including times

22  scheduled for lunch; (9) data from the computer systems used by TSCs related to the

23  amount of time worked by the Class Members; and (10) Defendant's factual position

24
25  ---
[2] Defendants (KFHP, KFH, and SCPMG) are Kaiser entities that employed Class Members in this case.
Out of the fifty (50) Class Members, forty-seven (47) are or were employed by KFHP in the position of
26  TSCs; four (4) of the Class Members were employed by SCPMG but two (2) of these individuals were
also employed by KFHP as TSCs during that same time period; and one (1) was employed by KFH.
27  (Azadian Decl. ¶ 8.)

28

related to the classification of TSCs as exempt employees.  (<u>Id.</u> ¶ 10.)  Prior to the mediation, the Parties also exchanged mediation briefs in order to ensure that the Parties' respective positions were appropriately analyzed.  (<u>Id.</u> ¶ 11.)

Prior to the mediation, Class Counsel obtained the production of relevant documentation from Defendants.  (<u>Id.</u> ¶ 12.)  Class Counsel interviewed Class Members regarding the claims in the Action, and examined Defendants' compliance with its policies, procedures, and practices.  (<u>Id.</u>)

In addition, prior to the mediation, Class Counsel conducted in-depth fact gathering from all four (4) of the Class Representatives about their duties, work schedules, meal periods, and rest breaks.  (<u>Id.</u> ¶ 13.)  Prior to the mediation, Class Counsel also conducted interviews with numerous Class Members and obtained declarations from Class Members for use at the mediation.  (<u>Id.</u>)

### D.    <u>Mediation With David A. Rotman & Confirmatory Discovery</u>

The Parties engaged in mediation following the exchange of the discovery discussed above and independent investigation of Class Counsel.  (<u>Id.</u> ¶ 14.)  More specifically, on September 12, 2018, the Parties participated in a full-day mediation before David A. Rotman in San Francisco.  (<u>Id.</u>)  Mr. Rotman was agreed to by the Parties based on his excellent experience as a mediator and specific experience in mediating wage-and-hour class actions.  (<u>Id.</u>)  As a result of the arm's-length negotiations at mediation, the Parties reached an agreement which was memorialized in a memorandum of understanding, which was subject to negotiation of a long-form agreement and confirmatory discovery.[3]  (<u>Id.</u>)

---

[3] <u>In re First Capital Holdings Corp. Financial Prods.</u>, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length."); <u>see also</u> <u>Toure v. Amerigroup Corp.</u>, No. 10-cv-5391 RLM, 2012 WL 1432302, at *1 (E.D. N.Y. Aug. 6 2012) ("The assistance of an experienced mediator, Linda Singer, Esq., reinforces that the Settlement Agreement is non-collusive"); <u>Morales v. Stevco, Inc.</u>, No.: 09-cv-00704 AWI, 2011 WL 5511767, at *11 (E.D. Cal. Nov. 10, 2011) (concluding that the class action settlement was not collusive because "[t]he parties utilized an impartial mediator".)

-4-

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Following the mediation, the Parties continued to negotiate at arm's-length the formalized long-form Settlement Agreement, which has already received preliminary approval by the Court and is now before the Court for final approval. (Id. ¶ 15.)

Following the mediation, Class Counsel also ensured the discovery provided for the mediation was confirmed in the form of a declaration from Defendants' most senior-level employee in Kaiser's National Timekeeping Department. (Id. ¶ 16.) This declaration confirmed the information provided by Defendants at the mediation, including the following information (as of the date of the mediation discovery provided on August 29, 2018), including (but not limited to: the size of the Class being fifty (50) current and former employees (inclusive of the four (4) Class Representatives); the total number of workweeks worked by the Class being 4,545 workweeks and the average length of employment of Class members; the average salary of Class members during the Class period being $59,696; authenticating the job descriptions for the TSC position held by the Class Members; and authenticating the scheduling of hours for the Class Members provided for the mediation. (Id.)

### E.    **Preliminary Approval**

On March 18, 2019 this Court granted preliminary approval of the Settlement [Dkt. No. 20]. Now that the Notice process is complete, Plaintiffs respectfully submit the Settlement for final approval.

### III.    **THE SETTLEMENT**

### A.    **The Settlement Class & Release Claims**

The Settlement Agreement was previously filed on February 13, 2019 in connection with the Motion for Preliminary Approval and for the convenience of the Court is also included as Exhibit 1 to concurrently-filed Azadian Decl.

The "Settlement Class" is defined as all Class Members who do not file a timely and valid Request for Exclusion. "Class Members" are defined as: all employees or former employees who, between March 13, 2014 and March 18, 2019 (the "Class

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Period") performed the duties of a TIME System Coordinator and worked for (1) Kaiser Foundation Health Plan, Inc. ("KFHP") in California with the job title of TIME System Coordinator and in job code 01293, 04016, or 921023; or (2) Southern California Permanente Medical Group ("SCPMG") in California with the job title of Timekeeping Coordinator and job code 04016; or (3) Kaiser Foundation Hospitals ("KFH") in California with the job title of TIME System Coordinator and job code 04016. (Settlement Agreement ("SA") §§ 1.6 & 1.36.)  Individuals included within the definition of the Settlement Class are the "Settlement Class Members."  The Settlement Class definition mirrors the class definition in the operative Amended Complaint.  (SA § 1.37.)

The Settlement Class consists of fifty (50) Class Members.  (SA § 1.6.)  The Class Members are ascertainable through Defendants' employment and payroll records.  (Id.)  The scope of the "Released Claims" is limited only to those claims that were brought by Plaintiffs in this action related to facts alleged in the Action or claims, including unknown claims that arise out of those same allegations.  (SA § 6.1.)  In addition to the "Released Claims," Settlement Class Members opt into the FLSA Class to release the "FLSA Released Claims" by endorsing their Individual Settlement Payment check by signing the back of the check and depositing or cashing the check.  (SA §§ 4.2 & 6.1.)  The named Plaintiffs also have agreed to a broader release of all known or unknown claims, however, this broad release is limited only to the Plaintiffs.  (SA § 6.2.)

**B.    The Settlement Payment**

Through the Settlement, Defendants shall pay a total sum of $425,000 (the "Gross Settlement Amount") in full settlement of all claims alleged in the Action.  (SA § 1.19.)  In addition to the Gross Settlement Amount, Defendants shall pay the employers' share of any applicable payroll taxes.  (SA § 1.19.)  ***Under no circumstances shall any portion of the Gross Settlement Amount revert to Defendants.***  (SA § 1.19.)

The Gross Settlement Amount shall be dispersed at the times and in the amounts set forth in Section 5 of the Settlement Agreement and said payments shall be distributed

-6-

by the Settlement Administrator amongst members of the Settlement Class who do not timely and validly opt out of the settlement, Plaintiffs, and Class Counsel as detailed below in Section III.C.  (SA § 5.)

### C.    Settlement Payment Distribution Plan

All expenses associated with the Settlement are to be paid from the Gross Settlement Amount, including up to $141,666 to Class Counsel for attorneys' fees (33.33% of the Gross Settlement Amount), up to $15,000 to Class Counsel for reimbursement of litigation expenses incurred, an incentive payment of up to $20,000 to Plaintiffs ($5,000 per Plaintiff) for their service as the Class Representatives and in consideration for a general release of all claims against Defendants), settlement administration expenses not to exceed $15,000[4] to be paid to a qualified Settlement Administrator to administer the notice and process payments.  (SA §§ 5.1-5.3.)

In addition, $15,000 is to be allocated to the California Labor and Workforce Development Agency in resolution of any claims that could be or could have been asserted under the Private Attorney General Act of 2004 ("PAGA"), codified in California Labor Code § 2698, *et seq.*, pertaining to or premised upon the alleged violations settled by the Settlement (the "PAGA Claims").  (SA § 5.4.)  Pursuant to California Labor Code section 2699(i) and subject to approval by the Court under California Labor Code section 2699(l), $11,250 out of the Gross Settlement Amount will be paid to the California Labor and Workforce Development Agency, in resolution of the PAGA claims.  The remaining $3,750 of the amount attributed to the PAGA claims will be allocated and paid to the Class Members as part of the Net Settlement Amount.  (SA § 5.4.)

---

[4] The actual cost of the settlement administration expense is $6,000.  (See concurrently filed Declaration of Jeremiah Kincannon Regarding Notice and Settlement Administration ("Kincannon Decl."), ¶ 12.)

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to California Labor Code § 2699(l), in connection with the Motion for Preliminary Approval, the Settlement Agreement was previously provided to the Labor and Workforce Development Agency.  (Azadian Decl. ¶ 3.)

## 1.  Settlement Class Members' Individual Settlement Payments

After deducting from the Gross Settlement Amount the above expenses, the remainder (the "Net Settlement Amount") shall be distributed to members of the Settlement Class as set forth in the formula below:

> The individual settlement payment to a Settlement Class Member will be calculated by dividing the number of Eligible Workweeks attributed to the Settlement Class Member worked during the Class Period by all Eligible Workweeks during the Class Period attributed to members of the Settlement Class, multiplied by the Net Settlement Amount.  Otherwise stated, the formula for a Class Member is: (individual's Eligible Workweeks ÷ total Settlement Class Eligible Workweeks) x Net Settlement Amount.

(SA § 5.5.1.)

Defendants' time records regarding the number of Eligible Workweeks worked for each Class Member shall be used for purposes of calculating individual settlement payments.  (Id.)  The Class Notice included an Employee Information Sheet for each Class Member showing how much the individual Settlement Class Member is expected to receive based on this formula and their number of eligible workweeks.  (Id.)  The Employee Information Sheet in the Class Notice also provided the Settlement Class Members an opportunity to dispute the number of Workweeks indicated on the Employee Information Sheet.  (Id.)

To the extent the total value of all Individual Settlement Payments is less than 100% of the Net Settlement Amount, the unclaimed portion will be allocated to Settlement Class Members who cashed the first check on a proportional basis relative of the size of their claims.  (Id.)  Each employee's calculation in connection with these

unclaimed funds will include the employee paying both the employee and employer side of payroll taxes.  (Id.)

## 2.  <u>Distributions To Settlement Class</u>

In order to ensure that the Net Settlement Fund is received by Settlement Class Members, the distribution of the Individual Settlement Payments may be made in two (2) phases.  First, the Settlement Administrator shall issue Individual Settlement Payments no later than fifteen (15) business days after the Effective Date.  (SA § 5.5.2.)  Any checks from the first distribution that are not cashed within one-hundred-eighty (180) calendar days from the date of the mailing of the checks shall be cancelled and said cancellation shall not affect the validity of the Release of claims provided for herein and the Settlement Class Member shall be deemed to, nevertheless, be bound by the Release of claims provided herein.  (Id.)

In the event the amount to be distributed is less than $5,000, the unclaimed portion will be allocated to the California State Controller's Office Unclaimed Property Program with the identity of the recipient of the first distribution check to whom the funds belongs.  (Id.)

Second, not later than two hundred (200) calendar days from the date of mailing of the checks the unclaimed portion will be allocated to Settlement Class Members who cashed the first check on a proportional basis relative of the size of their claims. (Id.)  Any checks from the second distribution that are not cashed within one-hundred-eighty (180) calendar days from the date of the mailing of the second distribution of checks shall be canceled or voided and the Claims Administrator shall pay over the amount represented by the checks, including any otherwise unpaid interest accumulated in the Qualified Settlement Fund, to the California State Controller's Office Unclaimed Property Program, with the identity of the recipient of the second distribution check to whom the funds belongs.  (Id.)

Each Individual Settlement Payment will be allocated as 20% to wages and 80% to interest and penalties, which represents the Parties' good faith allocation based on the claims asserted and potential damages related to wages and interest and penalties. (SA § 5.5.3.) In accordance with law, the Settlement Administrator will make required tax withholdings from each Individual Settlement Payment on the portion designated as wages and will remit the withholding to the appropriate taxing authorities. (Id.) The Settlement Administrator shall issue any necessary Form W-2 and 1099 statements to Settlement Class Members for their respective Individual Settlement Payments. (Id.)

## IV.  NOTICE TO THE SETTLEMENT CLASS HAS BEEN SUCCESSFULLY COMPLETED

Due process requires that notice be provided by the best reasonable method available. See Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 173 (1974) ("Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. United States, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The notice plan that was approved by the Court in its Order Granting Preliminary Approval [Dkt. No. 20] has been successfully completed. (See Kincannon Decl. ¶¶ 3-8.) The Parties agree that because speaking and writing in English is a job requirement for the Class Members' position as TIME System Coordinators, translation of the Class Notice is not required. (SA § 3.1.)

On March 19, 2019, Simpluris received the Court-approved Class Notice from Plaintiffs' Counsel. (Kincannon Decl. ¶ 4.) The Class Notice advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the

-10-

implications of each such action.  (<u>Id.</u>)  The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information.  (<u>Id.</u>)  The Employee Information Sheet was pre-printed with the name and address of the Class Member, work weeks used to calculate his/her estimated settlement share, and instructions for challenging the work weeks.  (<u>Id.</u>)

On March 28, 2019, Counsel for Defendant provided Simpluris with a mailing list containing the name, last known address, and pertinent employment information during the Class Period for the Class Members.  The Class List contained data for 50 unique Class Members.  (<u>Id.</u> ¶ 5.)

The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  (<u>Id.</u> ¶ 6.)  The NCOA contains changes of address filed with the U.S. Postal Service.  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets. (<u>Id.</u>)

On April 11, 2019, after updating the mailing addresses through the NCOA, Notice Packets were mailed via First Class Mail to 50 Class Members contained in the Class List.  All Notice Packets were delivered, none were returned, and there was no need for remailing.  (<u>Id.</u> ¶¶ 7-8.)

## V.    <u>CLASS PARTICIPATION: NO REQUESTS FOR EXCLUSION & NO OBJECTIONS</u>

As a result of the notice process, which included a detailed and simple-to-read Class Notice and a toll-free number for Class Members to call with questions regarding the Settlement, there have been ***no requests for exclusion (opt-outs) and no objections made to the Settlement***.  Class Members who wished to object to the settlement were directed to mail Simpluris their objection. ***As a result of the notice process, there have***

1
2
**been no requests by Class Members for exclusion (opt-outs) and no objections made to the Settlement.** (Id. ¶¶ 9-10.)

3
4
5
The lack of any requests for exclusion or any objections makes it clear that the Settlement has been embraced by the Class as one which is fair, adequate and reasonable, and one which should be granted final approval at this time.

6
7
## VI.    THE SETTLEMENT WARRANTS FINAL APPROVAL UNDER RULE 23 AND THE FLSA

8
9
10
11
12
13
14
15
Federal law strongly encourages settlements in the context of class actions. See, e.g., Franklin v. Kaypro Corp., 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class action suits.") (quotations omitted). According to the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." See In re Syncor ERISA litigation, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted). The Parties believe that their best interests are served by entering into the Settlement Agreement.

16
17
18
19
20
21
Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to the Class Members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

22
23
24
In order to approve the Settlement, this Court must conclude that the Settlement is "fair, adequate and reasonable," and is the product of arm's-length and informed negotiations. See In re Heritage Bond Litig., 546 F.3d 667, 674 (9th Cir. 2008).

25
26
27
Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982). Because the factors in evaluating a proposed

28

-12-

settlement under the FLSA and Federal Rule of Civil Procedure Rule 23 assess the same factors, Plaintiffs' analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim.  Compare Murillo v. Pacific Gas & Electric Co., 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with Rodriguez v. West Publishing Corp., 563 F.3d 948 (9th Cir. 2009).

### A.    The Settlement Is Fair, Adequate, And Reasonable

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate."  See F.R.C.P. 23(e)(2).  In making this determination, the Court may consider: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the settlement (which is evaluated at the final approval hearing, after class members have received notice).  Rodriguez v. West Publishing Corp., 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiffs address each relevant factor below.

### 1.    The Strength Of Plaintiffs' Case

Plaintiffs are, or were, employees of Defendant in the role of Time System Coordinators ("TSCs") who work in a centralized call center in Corona, California. TSCs are not required to have any college degree, professional certificates, or licenses. Many TSCs like Plaintiff Tiffany Gretler and Plaintiff Laura Carmona do not have college degrees.  (Azadian Decl. ¶ 20.)  The core issue that all of the claims in the Action are predicated on is whether the Class Members were misclassified as exempt employees, not entitled to overtime.  (Id.)  A key secondary issue is the alleged amount of overtime worked by Class members.  (Id.)

Plaintiffs allege that they and the other Class Members, answer calls from Kaiser entity employees who are considered "timekeepers" or "approvers" of employees'

-13-

timecards.  (Id. ¶ 21.)  Plaintiffs allege that TSCs spend a large portion of time: (1) answering a high volume of calls and answering questions asked by timekeepers (managers) during their scheduled hours at work; (2) perform data entry related to processing payroll forms; and (3) perform processing of pay period adjustments (such as when there was an error in time entered during a previous period).  (Id.)

Defendants claim that TSCs fall under the administrative exemption because they are supposedly engaged in high-level administrative duties and work independently in using their own judgment, expertise, and problem-solving skills to ensure overall quality control of Defendants' timekeeping system.  (Id. ¶ 22.)  The administrative exemption requires an employee to compare and evaluate possible courses of conduct and subsequently act or make a decision after the various possibilities have been considered and further implies that "the employee has authority to make an independent choice, free from immediate direction or supervision."  See Nordquist v. McGraw-Hill Broadcasting Co., 32 Cal. App. 4th 555, 564 (1995).

The TSCs external job description provided by Defendants contains a laundry list of "essential functions," which would require independent judgment and discretion. (Azadian Decl. ¶ 23.)  In addition, Defendants contend that TSCs are primarily engaged in high-level administrative duties in connection with the timekeeping system, they work independently and are expected to use their judgment, expertise, and problem-solving skills to ensure overall quality control of Kaiser's time management system.  (Id.) Defendants also contend that the duties of all TSCs include assessment and resolution of issues from managers and timekeepers and ensuring compliance with timekeeping guidelines and the provisions of various collective bargaining agreements.  (Id.) Defendants also contend that TSCs are regularly tasked with evaluating training needs and providing training and education to managers and timekeepers in a variety of formats, analytical research and program development for the system, coordination with HR and Payroll departments regarding timekeeping and pay issues, conducting audits and

-14-

testing of timekeeping system operations and features when needed, identifying process improvement opportunities, identifying effective and efficient ways to solve client challenges and improve the timekeeping system, and working on special projects.  (Id.)

Defendants further contend and provided declarations at the mediation stating that TSCs do not need to work any time outside of their regular 40-hour schedule to complete their work and that employees in this role generally work their regular 8-hour day and do not take work home unless they take time off during the workday to run errands or attend to other personal matters.  (Id. ¶ 24.)  As Defendants did not keep time records for the Class Members (due to their classification as "exempt" employees), there is a dispute regarding the number of hours of alleged overtime worked by the Class Members.  (Id.)

### 2.  <u>Risk, Expense, And Complexity Of Further Litigation</u>

Class Counsel has conducted a thorough investigation into the facts of the class action, diligently evaluated the Class Members' claims against Defendants, investigated the facts relating to the claims alleged in the Action and analyzed all defenses, and obtained the production of relevant documentation from Defendants prior to mediation.  (Id. ¶ 25.)  Class Counsel conducted hours of in-depth interviews of the four (4) named Plaintiffs, obtained and analyzed numerous documents from the named Plaintiffs pertaining to their job duties, and interviewed other Class Members regarding the claims in the Action.  (Id.)

Following the mediation, Class Counsel obtained confirmatory discovery in the form of a declaration on behalf of Defendants, which attested to the discovery received prior to the mediation, including but not limited to: the size of the Class, the number of current and former employees in the Class, the average salary for Class Members during the class period, the total number of workweeks worked by Class Members, the average length of employment for Class Members, the authenticity of documents setting forth the duties of Class Members, the authenticity of documents relating to the work schedule for

Class Members, the scheduling of meal and rest periods for Class Members, and setting forth the hours generally worked by Class Members. (<u>Id.</u> ¶ 26.)

Based on the foregoing data and their own independent investigation and evaluation, Class Counsel believes that the settlement with Defendants for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances. (<u>Id.</u> ¶ 27.)

These risks included: the risk of significant delay; risks associated with class certification given that the putative class members' duties varied, some were tasked with lengthy special projects, and some had more advanced knowledge about the application of various collective bargaining agreements that had to be analyzed in responding to timekeepers (managers) inquiries; the defenses asserted by Defendants; the number of putative class members who provided declarations supporting Defendants' arguments that they are subject to the administrative exemption and that overtime was not generally worked; and numerous potential appellate issues. (<u>Id.</u> ¶ 28.)

Although the Parties engaged in significant informal discovery, investigation, and class-wide data analysis, they had not completed formal discovery. (<u>Id.</u> ¶ 29.) Plaintiffs intended to depose Defendants' Rule 30(b)(6) witnesses, and Defendants planned to depose Plaintiffs, and both sides intended to depose putative class members. (<u>Id.</u>) Defendants also planned to move for summary adjudication on all or some of Plaintiffs' claims. (<u>Id.</u>) Preparation for class certification and trial remained for the Parties, as well as the prospect of potential appeals. (<u>Id.</u>) Thus, the Parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and accompanying expense. <u>See</u> <u>In re Portal Software, Inc. Sec. Litig.</u>, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. 2007) ("inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors final approval.

-16-

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### 3. **Risk Of Obtaining And Maintaining Class Action Status**

Plaintiffs have not yet moved for class certification. Absent settlement, there is a risk of not having a certified class at the time of trial and that the putative class members would not recover anything. (Azadian Decl. ¶ 30.) As discussed, Plaintiffs believe there are substantial risks associated with certifying the Class. Thus, this factor also supports final approval of the Settlement. (Id.)

### 4. **Settlement Amount Provides Realistic Value For Claims**

The Settlement provides a substantial monetary recovery for Class Members in the face of disputed claims. The potential damages in this action are approximately $990,304 (not including mandatory attorneys' fees and costs). Thus, the $425,000 Gross Settlement Amount represents approximately 42.92% of reasonably recoverable potential damages. (Id. ¶ 37.)

The percentage of liability exposure recovered in this case exceeds percentages routinely approved by courts. See Viceral v. Mistras Grp., Inc., No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) (approving wage and hour class action settlement amounting to 8.1% of potential damages); see also Dunleavy v. Nadler, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-sixth of the potential recovery"); Nat'l Rural Telecomm. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial").

The Unopposed Motion for Preliminary Approval conducted a thorough analysis of the terms of the Settlement (including an evaluation of each cause of action and potential damages for each cause of action). Due to the length of the analysis of these factors, which the Court has already carefully reviewed and ruled upon, that same analysis is not repeated here but is incorporated by this reference. (See Memorandum In

-17-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Support Of Motion For Preliminary Approval [Dkt. No. 17], at pgs. 21-26; Azadian Decl. ¶¶ 31-37.)

Here, the highest Individual Settlement Payment is calculated to be approximately $11,954.19 and the average Individual Settlement Payment is calculated to be approximately $4,621.86.  (Kincannon Decl. ¶ 11.)

### 5. <u>Discovery Completed And The Status Of Proceedings</u>

The Parties engaged in significant discovery and investigation and also in confirmatory discovery following the mediation.  (See Azadian Decl. ¶¶ 10, 12-14, 16, 26, 29, 31.)  Thus, this factor supports final approval of the Settlement.

### 6. <u>The Experience And Views Of Counsel</u>

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  <u>In re Pac. Enter. Sec. Litig.</u>, 47 F.3d 373, 378 (9th Cir. 1995).  Here, Plaintiffs are represented by Class Counsel with extensive experience in similar cases.  Class Counsel has represented both plaintiffs and defendants in class action and other complex matters. Class Counsel has never been found inadequate to serve as class counsel and has been approved as class counsel in: <u>Castaneda v. SMCP USA, Inc.</u>, Los Angeles Superior Court Case No. BC687413; <u>Dieda v. Rodra, Inc.</u>, Los Angeles Superior Court Case No. BC677449; <u>Martin v. Starbucks Corporation.</u>, Los Angeles Superior Court Case No. BC582335; <u>Eduarado Gaa v. Intercare Holdings Inc.</u>, Los Angeles Superior Court Case No. BC488375; and <u>Luis Irizarry v. Healthcare Services Group, Inc.</u>, Los Angeles Superior Court Case No. BC489570.

Class Counsel is qualified to evaluate the risks and benefits of both litigation and settlement in this matter, and recommends this Settlement as fair and reasonable to the Class.  (<u>See</u> Azadian Decl. ¶¶ 37-38.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.    The Reaction Of The Class Members To The  Settlement

A Court may infer that a class action settlement is fair, adequate, and reasonable when few class members object.  See Marshall v. Holiday Magic, Inc., 550 F.2d 1173, 1178 (9th Cir. 1977).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  Nat'l Rural Telecomm. Coop., supra, 221 F.R.D. at 529.

Here, the response to the Settlement has been overwhelmingly positive.  Not a single Class Member has filed an objection to the proposed settlement or any portion thereof.  (See Kincannon Decl. ¶ 9.)  Moreover, no Class Members have requested exclusion from the Settlement.  (Id. at ¶ 10.)  The complete positive reaction of the Class Members to the Settlement supports final approval.

## VII.    CONCLUSION

In its March 18, 2019 Order granting preliminary approval, this Court certified the Classes for settlement purposes.  [Dkt. No. 20.]  As circumstances have not changed, the Settlement has been embraced by the Settlement Class, and for the reasons set forth above and in their Motion for Preliminary Approval (Dkt. No. 17), Plaintiffs request that the Court finally certify the Classes for settlement purposes.  See Schiller v. David's Bridal, Inc., No. 10-cv-616-AWI, 2011 WL 2117001, at *8 (E.D. Cal. 2012) ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    For the reasons set forth herein, Plaintiffs respectfully request that the Court grant

2  this Motion and enter the [Proposed] Order granting final approval of the Settlement.

3  Dated:  June 24, 2019                    AZADIAN LAW GROUP, PC

4

5                                      By   /s/ George S. Azadian

6                                          George S. Azadian
                                           Ani Azadian
7                                          Edrik Mehrabi
8                                          Attorneys for Plaintiffs Tiffany Gretler, Laura
                                           Carmona, Shelia Taylor, Shalyse Kemp, and the
9                                          Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT